**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **EVERETT PARKER,**<br><br>　　　　　　　**Plaintiff,**<br><br>　v.<br><br>**LIEUTENANT BIRD,** *et al.*,<br><br>　　　　　　　**Defendants.** | CIV-F-02-5919 OWW WMW P<br><br>ORDER ON DEFENDANTS'<br>OBJECTIONS TO MAGISTRATE<br>JUDGE'S FINDINGS AND<br>RECOMMENDATIONS (Doc. 25) |

　　　Plaintiff, a state prisoner proceeding *pro se* in this civil rights action, seeks relief pursuant to 42 U.S.C. § 1983. Plaintiff alleges that prison officials at the Sierra Conservation Center ("SCC") of the California Department of Corrections refused to give him his diabetic medication. Before the court is Defendants' Opposition to the Magistrate Judge's Findings and Recommendations ("F & R") recommending the denial of Defendant's Motion for Summary Judgment.

### I.　BACKGROUND FACTS

　　　Plaintiff is a Type I "brittle" diabetic, whose erratic blood sugar levels must be frequently adjusted with medication. Because Plaintiff's pancreas no longer produces insulin, he must receive insulin injections in order for his body to use glucose obtained from his meals. Iannone Decl. at ¶3, Doc. 20, Ex. 1.

Approximately two weeks before October 16, 2001, Plaintiff received smaller doses of insulin as part of a new control regimen that included a new type of insulin, Lantus.  During the night of October 15, 2001, Plaintiff experienced vomiting and dehydration for ten or twelve hours.  Iannone Decl. at ¶5 ; Parker Depo. at 6, Doc. 20, Ex. 3.  On October 16, 2001, officials released Plaintiff from his cell at 5:45 a.m.  Parker Depo. at 8.  Plaintiff walked to the medical clinic and tried to obtain his insulin injection and fasting glucose test, but no Medical Technical Assistant ("MTA") was available.  Because of a recent security problem, the prison was on lockdown.  Among other restrictions imposed during a lockdown, prison officials imposed "controlled feeding" for breakfast on October 16, 2001.  Bird Decl. at ¶3, Doc. 20, Ex. 2.  During controlled feeding, inmates are released to the dining hall by racial or ethnic groups in order to minimize disruptions.  *Id*.  At approximately 6:00 a.m., Corrections Officer ("C/O") Cruz told Plaintiff to go to breakfast. Parker Depo, at 9.  Plaintiff complied with this order and went to the dining hall, but he did not eat.  *Id*.

After Plaintiff left the dining hall, he asked C/O Woods if he could see the MTA on duty.  Woods granted him permission, and Plaintiff went to the medical office.  When MTA Dunbar came out of the clinic, C/O Cruz said "no one is allowed medication."  Plaintiff told C/O Cruz he needed his insulin shot, but she replied that "there [was] nothing she could do" because Lt. Bird had instructed that no medication was to be dispensed during controlled feeding.  *Id*. at 9.  Plaintiff went to Lt. Bird and told him he was "feeling ill," "wasn't feeling right," and

**2**

"needed to check his insulin, fasting glucose, and blood glucose." Lt. Bird "said he didn't care" and told Plaintiff that there was a controlled feeding. Plaintiff repeated that he "needed to take insulin", but C/O Nall told Plaintiff he would be placed in Administrative Segregation unless he returned to his cell. *Id*. at 9-10.

Plaintiff went to his cell and experienced "blurred vision, vomiting, and a burning sensation in his stomach." About 8:45 a.m., prison officials released Plaintiff from his cell to the medical clinic. MTA Dunbar checked Plaintiff's blood sugar level and gave him an insulin shot. Plaintiff's blood test revealed a high blood sugar level of 481 mg/dl. Plaintiff told Dunbar he "wasn't feeling well." Dunbar told him, "go back to the building and if you are not feeling well, notify them and we'll come over to your building." *Id*. at 11. This evidences that MTA Dunbar gave plaintiff insulin and expressed concern that if Plaintiff was not feeling well after returning to Plaintiff's building that MTA Dunbar could come to Plaintiff's building to see him. There is no evidence of deliberate indifference or wanton infliction of pain, rather only a quarrel over whether MTA Dunbar used the "best" medical judgment in treating Plaintiff's insulin deficiency.

While Plaintiff's walked back to his cell, he became dizzy and vomited. Plaintiff returned to the medical clinic, where he lay down and passed out. Dr. Iannone examined Plaintiff and transported him to a local hospital at 9:45 a.m. to stabilize his blood sugar levels. Plaintiff was not in a state of

**3**

ketoacidosis[1] when he was transported. After his hospitalization, Plaintiff returned to prison that day. *Id*. at 12; Iannone Decl., at 2.

## II.    **PROCEDURAL HISTORY**

On October 28, 2001, Plaintiff filed a "Reasonable Modification or Accommodation Request" with SCC for "specific procedures whereby diabetics can receive their insulin injections and fasting glucose test prior to their meals." On November 6, 2001, an associate warden approved this request.

On October 28, 2001, Plaintiff also filed an administrative appeal with SCC, requesting (1) a "policy that all insulin dependent diabetics receive their medication prior to eating their meals, and at any such other time needed" and (2) "compensation for the pain and suffering" that resulted from his hospitalization "due to the tardiness of [his] insulin injection." The director denied this request because prison officials had already modified the controlled feeding program to ensure more timely delivery of medication. SCC instructed their staff that inmates could receive insulin or glucose checks on the way to the dining hall or in their cells. The director also denied Plaintiff's request for monetary compensation because it was beyond the scope of the appeals process. The director's

---

[1]Ketoacidosis is a state of insulin deficiency with catabolism of body fats and acid accumulation. Catabolism is the destructive phase of metabolism and includes all the processes in which complex substances are converted into simpler substances, usually with the release of energy. Taber's Cyclopedic Medical Dictionary, 14th Edition.

**4**

decision letter also stated that the decision "exhausts the administrative remedy [sic] available to the appellant within the California Department of Corrections." Doc 15, Ex. A-1.

On June 28, 2002, Plaintiff filed a complaint in federal court, claiming that Defendants deprived him of access to medical care and violated the Eighth Amendment's prohibition on cruel and unusual punishment. On April 22, 2003, Defendants moved for summary judgment on the grounds that (1) Defendant's delay did not cause Parker's problems and (2) MTA Dunbar is entitled to qualified immunity. On March 3, 2005, the Magistrate Judge issued findings and recommendations denying Defendant's motion for summary judgment. On March 17, 2005, Defendants filed timely objections to the Report and Recommendation.

### III.  **STANDARD OF REVIEW**

Petitioner's case is reviewed *de novo* under 28 U.S.C. § 636(b)(1)(B).

**The General Summary Judgment Standard**

Summary judgment is warranted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). To defeat a motion for summary judgment, the non-moving party must show (1) that a genuine factual issue exists and (2) that this factual issue is material. *Id*. A genuine issue of fact exists when the non-moving party produces evidence on which a reasonable trier of fact could find in its favor viewing the record as a

**5**

whole in light of the evidentiary burden the law places on that party. *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-56 (1986). Facts are "material" if they "might affect the outcome of the suit under the governing law." *Campbell*, 138 F.3d at 782 (quoting *Anderson*, 477 U.S. at 248).

The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrell*, 477 U.S. 317, 322-23 (1986). The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment. *See United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1996). Nevertheless, the evidence must be viewed in a light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. A court's role on summary judgment is not to weigh evidence or resolve issues; rather, it is to determine whether there is a genuine issue for trial. *See Abdul-Jabbar v. G.M. Corp.*, 85 F.3d 407, 410 (9th Cir. 1996).

## IV. ANALYSIS

"The government has an obligation to provide medical care for those whom it punishes by incarceration." *Hutchinson v. United States*, 838 F.2d 390 (9th Cir. 1998). "An inmate's complaint of inadequate medical care amounts to a constitutional violation if the inmate alleges acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (emphasis added).

### A. Deliberate Indifference

Prison officials are "deliberately indifferent" when they "deny, delay or intentionally interfere with medical treatment." *Hutchinson*, 838 F.2d at 394.

The indifference to the prisoner's medical needs, however, must be substantial. "Mere indifference, negligence, or medical malpractice will not support this cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458 (9th Cir. 1980). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d at 1334. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eight Amendment." *Estelle*, 429 U.S. at 104.

The Ninth Circuit has applied the deliberate indifference standard in a number of cases. In *Ortiz v. City of Imperial*, 884 F.2d 1312 (9th Cir. 1989), defendants acted with deliberate

indifference when they knew of a prisoner's head injury but totally failed to treat it competently. Also, in *Hoptowit v. Ray*, 682 F.2d 1237 (9th Cir. 1982), prison officials showed deliberate indifference to serious medical needs when prisoners could not make their medical problems known to the medical staff.

    Here, Lt. Bird's alleged actions rose to the level of "deliberate indifference." It is undisputed that Lt. Bird's actions took place during controlled feeding, a safety measure used to prevent disruption among inmates. In this case, however, there was no imminent danger associated with a prison riot or uprising. *Compare Whitley v. Albers*, 475 U.S. 312 (1986) (where a guard's shooting of a prisoner in the leg during a prison riot did not violate the prisoner's right to be free from cruel and unusual punishment). It is also undisputed that Lt. Bird ordered that diabetic inmates were not permitted to go to the medical office until breakfast was finished. As in *Ortiz* and *Hoptowit*, Lt. Bird's order prevented Plaintiff from seeking medical help from MTA Dunbar at the clinic. According to Plaintiff, Lt. Bird knew that Plaintiff was ill and needed to check his insulin, fasting glucose, and blood glucose. Plaintiff also alleges that Lt. Bird said "he didn't care" when Plaintiff told him that he needed his insulin injection. Parker Depo., at 20. Lt. Bird's statement remains a disputed fact, but must be viewed in the light most favorable to Plaintiff for the purposes of this summary judgment motion. Taking all these facts into consideration, Lt. Bird's actions could support the inference that he acted with knowledge that failure to provide medication Plaintiff would cause the "unnecessary and wanton" infliction of pain.

**B.   "Sufficiently Harmful"**

"In order to state a cognizable claim [under the Eighth Amendment], a prisoner must allege acts or omissions <u>sufficiently harmful</u> to evidence deliberate indifference." *Estelle*, 429 U.S. at 104 (emphasis added).  When a prisoner alleges a delay in receiving medical treatment, the prisoner must allege that the delay <u>led to further injury</u>.  *See Shapley v. Nevada Bd. of State Prison Commrs.*, 766 F.2d 404, 407 (9th Cir. 1985) (emphasis added).  Here, Plaintiff offers evidence that the two-hour delay resulted in two harms: (1) a high sugar level of 481 mg/dl and (2) his hospitalization.  It is undisputed that Plaintiff had a high sugar level of 481 mg/dl and that he was hospitalized.

Although a blood sugar level of 481 mg/dl is high[2], the two-hour delay may not have caused Plaintiff's high blood sugar level.  Instead, Dr. Iannone opines that the probable cause of Plaintiff's high blood sugar level was a new control regimen that included a new type of insulin.  Iannone Decl., at ¶6.  Even if the delay contributed to Plaintiff's high blood sugar level, Plaintiff's attachment, an American Diabetes Association pamphlet, states that prolonged elevation of blood sugar levels "over many years" can harm the eyes, kidneys, and nerves.  Doc. 21, Ex. B.  In this case, Lt. Bird's actions, mandated by controlled feeding procedures, resulted in a two hour delay of

---

[2]Plaintiff attaches a letter from the American Diabetes Association which states, "Specifically, you asked would a blood glucose level of 481 be considered highly dangerous?  The American Diabetes Association's listed goal for a blood glucose level is 90-130 mg/dl.  Cause for concern should arise when levels reach 250-300 mg/dl.  Doc. 21, Ex. A.

**9**

medical treatment which did not result in ketoacidosis.[3]  Iannone Decl., at ¶5.

This case turns on medical causation.  The two-hour delay also did not cause Plaintiff's hospitalization.  Dr. Iannone's medical opinion is:  "I do not attribute [Plaintiff's] hospitalization on October 16, 2001 to receiving his insulin injection at 9:00 a.m. on that date."  *Id. a*t ¶6.  Dr. Iannone also opined: "had [Plaintiff] received his insulin shot two hours earlier, it probably would not have prevented his hospitalization.  By 9:00 a.m. on October 16, 2001, he had been ill with vomiting and dehydration for the preceding ten or twelve hours, so the likelihood that he would require hospitalization was already high."[4]  *Id*. at 3:5-12.  The probable major cause of Parker's high blood sugar level, and subsequent hospitalization, on October 16, 2001, was that he was receiving smaller doses of insulin as part of a new control regimen that included the use of a new type of insulin, Lantus (insulin glargine).  *Id*. at 3:10-13.  Plaintiff presents no medical evidence to counter Dr. Iannone's conclusion that the delayed treatment of insulin was not the efficient proximate cause of Plaintiff's hospitalization.  The two hour delay did not cause Plaintiff's hospitalization or the blood sugar level that caused his symptoms.  Defendant's

---

[3]Ketoacidosis occurs when blood sugar levels are too high and insulin levels are too low.  During ketoacidosis, the body starts breaking down fat for energy and produces harmful chemicals called ketones.  Ketoacidosis may result in vomiting, thirst, and even coma.

[4]It is undisputed that Plaintiff experienced vomiting and dehydration the night before his hospitalization.  Parker Decl., at 6.

actions were not "sufficiently harmful."  They were undertaken as part of legitimate institutional concerns.  Finally, the magistrate judge misread Dr. Iannone's opinion in concluding that "had [Plaintiff] received a timely injection, he probably 'would not have been sent to the hospital.'"  F&Rs, at 7:17-18.  This is a transposition of Dr. Iannone's stated opinion that the delayed insulin injection was "likely a minor cause of elevated sugar level," but receiving the shot two hours earlier "probably would not have prevented his hospitalization."  *Id*. at 7:13-14, 7:17.

### V.  CONCLUSION

Even if Lt. Bird acted with "deliberate indifference," the resulting hospitalization of to Plaintiff was not legally caused by constitutionally inadequate medical care administered to plaintiff.  Plaintiff has submitted no evidence that the two hour delay caused him unnecessary or exacerbated pain or suffering.  At most, his already elevated blood sugar level was heightened.  However, there is no medical evidence as to identifiable symptoms or physical harm that resulted from the delay.

The F&Rs of the Magistrate Judge are NOT ADOPTED.

Defendant's Motion for Summary Judgment (Doc. 19) is **GRANTED**.  Judgment shall be entered by the clerk of court for Defendants and against Plaintiff.

**SO ORDERED.**
**Dated: May 11, 2005**

                                        **/s/ Oliver W. Wanger**
                                            Oliver W. Wanger
                                    **UNITED STATES DISTRICT JUDGE**